Keith L. Gross
Gross Law Group, P.A.
478 N. Babcock Street
Melbourne, FL 32935
Tel. (406) 203-3373
Keith@GrossLaw.com

*Attorneys for the Representative Plaintiffs
and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| JOHN WALKER, LISA WALKER, C.G., a Minor Child, ROY PROVOST, AMY PROVOST and J.P., a Minor Child, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> WILDERNESS ALTERNATIVE SCHOOL INC., a Montana Corporation <br><br> Defendant. | Case No.: _____ <br><br> Judge: _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> *Nationwide Class Representation* <br><br> *Jury Trial Demanded* |

Plaintiffs, John Walker, Lisa Walker, C.G., a minor child, Roy Provost, Amy Provost, and J.P., a minor child, (collectively, "Representative Plaintiffs") by and through their undersigned counsel hereby file this Class Action Complaint, individually and as class representatives on behalf of all other persons or entities similarly situated (collectively,

"Plaintiffs") on knowledge as to their own status and actions and otherwise upon information and belief, allege for their complaint against Wilderness Alternative School, Inc., d/b/a Wilderness Treatment Center (hereafter, "Defendant" or "WTC") as follows:

## I. <u>INTRODUCTION</u>

1.    This is a consumer class action brought on behalf of all purchasers or users of Defendant WTC's services, for violations of the Montana Unfair Trade Practices Act of 1973 (Mont. Code Ann. §§ 30-14-101 *et seq.*), fraud in the inducement, negligent misrepresentation and negligent infliction of emotional distress arising from Defendant's marketing, sale and performance of certain behavioral health, housing, supervision, education, counseling, care and other related services ("Services").

2.    Defendant has made false, misleading statements that are likely to deceive reasonable consumers regarding its Services.

3.    Defendant's express or implied representations that its Services were suitable for at-risk youth in need of rehabilitation services were made in the United States and are false, deceptive, misleading and violate almost every state consumer protection law in the United States.

4.    Defendant has mistakenly or misleadingly represented that it offers a safe environment which is adequately staffed to provide a safe environment, lodging and counseling to support the recovery of boys

suffering from substance abuse and other behavior issues.

5.    Defendant does not maintain adequate staffing, facilities and other arrangements as necessary to deliver the promised Services and the Representative Plaintiffs have been damaged as a result.

6.    Representative Plaintiffs now bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who, from the applicable limitations period(s) up to and including the present, purchased or used Defendant's Services.    Defendant has deceived Representative Plaintiffs and other consumers nationwide. Through Defendant's unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Services that it would not have otherwise earned. Representative Plaintiffs bring this action to stop Defendant's misleading practice and recover damages.

## II. JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

8.    The total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). As set forth below, Representative Plaintiffs are citizens of North Carolina and Louisiana, and WTC can be considered a citizen of Montana. Therefore, diversity of citizenship exists under CAFA and diversity jurisdiction, as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A). Furthermore, Plaintiffs alleges on information and belief as WTC markets itself to a national consumer base that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than Montana, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

9.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiffs purchased the subject Services of this action in this judicial district. Venue is proper in this Court because the Defendants engaged in the conduct at issue in this judicial district and a substantial part of the events giving rise to the claims herein occurred in this judicial district. 28 U.S.C. § 1391(b)(2) and (b)(3).

10.    Venue is proper in the Missoula Division because the conduct at issue occurred in Flathead County, Montana. L.R. 1.2(c)(3), 3.2(b).

## III. <u>THE PARTIES</u>

11.    Representative Plaintiffs John Walker and Lisa Walker are individuals more than 18 years old and residents of North Carolina; C.G., their son, is under the age of 18 years old and is a resident of North Carolina (collectively, "Walker Family").

12.    Representative Plaintiffs Roy Provost and Amy Provost are individuals more than 18 years old and residents of Louisiana; J.P., their son, during the events herein was under the age of 18 years old and a resident of Louisiana (collectively, "Provost Family").

13.    C.G. and J.P. were each sent by their respective parents, to a facility operated by Defendant for treatment.

14.    Defendant, Wilderness Alternative School, Inc. d/b/a Wilderness Treatment Center ("WTC"), is a Montana corporation with its principal place of business located at 200 Hubbart Dam Road, Marion, Montana 59925.    WTC's Registered Agent, listed with the Montana Secretary of State, is Nancy Brekke at the same address.    Therefore, WTC can be considered a "resident" of the state of Montana for purposes of diversity jurisdiction or diversity of citizenship.

15.    WTC is the provider of the Services, and is the company that created and/or authorized the false, misleading, and deceptive advertising for the Services and is the company that promoted, marketed and sold the Services at issue in this judicial district.

16.    The statements and advertising for the Services relied upon by Plaintiffs were prepared and/or approved by WTC and its agents and were disseminated by WTC and its agents through advertising and direct statements containing the misrepresentations alleged herein.    The statements and advertising for the Services were designed to encourage consumers to purchase the Services and reasonably misled the reasonable consumer. (i.e. Plaintiffs and the Class)

17.    Plaintiffs allege that, at all relevant times, WTC and its subsidiaries affiliates and other related entities, as well as their respective employees were the agents, servants and employees of WTC, and at all relevant times, each acted within the scope and purpose of that agency and employment.

18.    Additionally, Plaintiffs allege that in committing the wrongful acts alleged herein, WTC, in concert with its subsidiaries, affiliates and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Services by means of false, misleading, deceptive and/or fraudulent representations and that WTC participated in the making of such representations in that it disseminated those misrepresentations or caused them to be disseminated.

19.    Whenever reference in this Complaint is made to any act or omission by WTC or its subsidiaries, affiliates, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents and/or representatives of WTC committed,

knew of, performed, authorized, ratified and/or directed that act or omission on behalf of WTC while actively engaged in the scope of their duties.

## IV.  FACTUAL ALLEGATIONS

20.    Plaintiffs repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

21.    Plaintiffs purchased Services from Defendant at its location in Montana in reliance on statements made in its advertising materials (see Exhibit 1, *Screenshots of WTC Website & Advertising Materials*, attached hereto and incorporated herein) and in phone conversations with Defendant's staff.

22.    In purchasing the Services, Plaintiffs relied on the material statements that the Services would be appropriate, adequate and safe for their at-risk children.

23.    Specifically, on April 10, 2018, Plaintiff John Walker spoke with Defendant WTC via its employee Chase Sewall who answered the Admissions Hotline. (see Exhibit 2, *Screenshots of WTC Website Staff Page*, attached hereto and incorporated herein) Mr. Walker explained to Mr. Sewall C.G.'s history and the critical concerns that he and Ms. Walker had regarding C.G.'s stated intent to run away. Mr. Sewall represented to Mr. Walker that WTC was suitable for his son, was a "good match" and that there was "nowhere to run" and intense supervision

which prevented the risk of runaways.  Mr. Sewall further stated that C.G.'s situation was "very typical" of the types of children routinely in their care.

24.    Relying on the statements of WTC and ruling out other facilities due to their inability to guarantee suitability for a child prone to running away, Plaintiff Walker Family sent their son, C.G. to WTC.

25.    WTC was aware that many children sent to its care would require specialized transport and supervision to ensure safe arrival. (see Exhibit 3, *WTC Website statement indicating safe escort required*, attached hereto and incorporated herein)

26.    The Walker Family ensured safe travel by hiring, at substantial expense, a transportation service operated by off-duty law enforcement officers which specializes in transporting teens who refuse to willfully travel to a rehabilitation facility.

27.    After admission, C.G. was assigned to WTC employee Nora Rye who spoke with Mr. Walker on multiple occasions and again reassured him that C.G. would not succeed in any attempts to escape or run away.  Ms. Rye repeated this assertion when Mr. Walker emailed her regarding C.G.'s stated plan to escape with other children staying at the WTC facility. (see Exhibit 4, *Email from John Walker to Nora Rye*, attached hereto and incorporated herein)

28.    WTC, including Ms. Rye, did not take necessary and required

actions to prevent C.G. from escaping.

29.    On April 16, 2018 Plaintiffs Roy and Amy Provost spoke with Defendant WTC via its employee Ben Dorrington.  Mr. & Mrs. Provost explained to Mr. Dorrington J.P.'s escape risk.  Mr. Provost reiterated this to Mr. Dorrington to ensure understanding that J.P. was a flight risk.

30.    Plaintiffs Roy & Amy Provost were assured by Mr. Dorrington there was nowhere for J.P. to go, and that they never had an escape in their facility during his [Mr. Dorrington's] tenure there.  Mr. Provost was very clear about J.P.'s escape risk and WTC was very adamant that they were sufficiently prepared to prevent escapes.

31.    Relying on the statements of WTC and ruling out other facilities due to their inability to guarantee suitability for a child prone to running away, the Provost Family sent their son, J.P. to WTC.

32.    On the day after J.P. arrived at WTC, he broke into a room at the facility in search of cigarettes.  On a subsequent evening, J.P. and another resident at WTC ran away from the facility after dinner and were later found by police and returned to WTC.

33.    These events, in addition to prior events, put WTC undeniably on notice as to the flight risk and other risks they had undertaken and the inadequacy of their safeguards, facility security and supervision.

34.    C.G. and J.P. did in fact escape the facility by using a WTC

owned vehicle. (see Exhibit 5, *Patrol Report by Washington County Idaho Sheriff's office*, attached hereto and incorporated herein)

35.   C.G., J.P. along with other Plaintiff sons were able to drive the WTC vehicle using keys left unsecured and available by WTC staff.

36.   WTC had a duty to operate a secure facility as promised to Plaintiffs and a duty to secure dangerous instruments, including but not limited to motor vehicles such as the one used to escape.

37.   During the time that C.G., J.P. and other Plaintiff sons escaped, the WTC facility did not have sufficient staff on site or in the cabin in which they were sleeping.

38.   There were no WTC staff members present in or supervising the cabin in which C.G. was sleeping on the evening he escaped despite his prior suicide threats and despite WTC promising Mr. Walker that C.G. would have 24 hour per day adult supervision as he would be on a "suicide watch".

39.   C.G. and other Plaintiff sons were taking a number of prescription medications which were discontinued upon direction of WTC staff and such discontinuation may have contributed to or caused unpredictable behavior or an increased risk of harm.

40.   WTC was or should have been aware of these increased risks.

41.   Defendant represented independently to both the Provost

Family and Walker Family that it was well equipped to prevent run aways and that there was "no place to go." These representations were in response to Plaintiffs' stated concerns that their sons had a demonstrated propensity to behave poorly and a stated desire to run away from treatment facilities.

42.    On information and belief, Defendant made similar representations to other Plaintiffs. (see Exhibit 6, *Screenshots of Negative Reviews Found Online*, attached hereto and incorporated herein)

**43.**    Defendant's representations to Plaintiffs were false, and as a result, Plaintiffs entrusted their sons to care of Defendant and suffered damages in an amount to be proven at trial.

## V. CLASS ACTION ALLEGATIONS

44.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

45.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

**All United States persons who have purchased Services from WTC and persons who have been provided Services from the applicable limitations period(s), through the filing date of this Complaint.**

46.    Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded or otherwise modified.  Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

47.    Defendant's practices and omissions were applied uniformly to all members of the Class, including any subclass arising out of the claims alleged herein, such that the questions of law and fact are common to all members of the Class and any subclass.

48.    All members of the Class and any subclass were and are similarly affected by the deceptive statements regarding Defendant's Services, and the relief sought herein is for the benefit of the Plaintiffs and members of the Class and any subclass.

49.    Based on the number of treatment counselors and the statement on WTC's website regarding client to counselor ratio it is apparent that the number of consumers in the Class is so large as to make joinder impractical, if not impossible.

50.    Questions of law and fact common to the Class exist that predominate over questions affecting only individual members,

including, inter alia:

a. Whether Defendant's practices and representations related to the marketing, and sales of the Services were unfair, deceptive and/or unlawful in any respect, thereby violating the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. §§ 30-14-101 *et seq.* ("MUTPA");

b. Whether Defendant's practices and representations related to the marketing and sale of Services amounted to negligent misrepresentations, and/or fraud in the inducement, and/or negligent infliction of emotional distress; and

c. Whether Defendant's conduct set forth herein injured consumers, and if so, the extent of that injury.

51.    The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

52.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclass.

53.    Plaintiff has retained counsel competent in both consumer protection and class action litigation.

54.    Certification of this class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the Class and any subclass predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient judgment of the claims.

55.    Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

56.    Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of consumers of the Services and their national geographic distribution, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

57.    A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result

from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

58.    The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## VI. <u>FIRST CAUSE OF ACTION</u><br><u>FRAUD IN THE INDUCEMENT</u>

59.    Plaintiffs repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

60.    Defendant represented in its advertising and phone statements that it provided a safe environment for recovery.

61.    Defendant's representations were material.

62.    Defendant did not provide a safe environment.    The Defendant's representations were false.

63.    Defendant represented that it maintained a specified level of staff.

64.    Defendant did not maintain that level of staffing.    The Defendant's representations were false.

65.    Defendant represented that its facility was appropriate and equipped for minors prone to run away, further representing that there was "nowhere to go."

66.    Defendant's facility was not appropriate or adequately equipped and maintained to prevent such running away.    In fact Defendant, by failing to secure its vehicle, provided a means for running away.   The Defendant's representations were false.

67.    Defendant knew at the time it made such representations that the same were false.

68.    Plaintiffs relied on Defendant's representations and their reliance was reasonable.

69.    Reliance on the truth of Defendant's false representations was the direct and/or proximate cause of damage to Plaintiffs.

70.    Defendant knew that Plaintiffs would rely on such representations and intended such reliance despite the high likelihood of harm to Plaintiffs.

71.    Plaintiff did not know that the Defendant's representations were false and had a right to rely upon such representations.

72.    But for these fraudulent misrepresentations, Plaintiffs would have not sent their children to Defendant, and/or would not have been at Defendant's facility.

## VII. SECOND CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

73.    Plaintiffs repeat and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

74.    Defendant made a series of representations regarding its ability to provide services to Plaintiffs including its ability to adequately care for Plaintiffs' sons, prevent them from running away, and provide specified levels of staffing and safety.

75.    These representations were untrue.

76.    Defendant knew or should have known that such representations were untrue.

77.    Such representations were made to induce Plaintiffs' reliance upon same.

78.    Plaintiffs did not know that these representations were false, and reasonably and justifiably relied upon representations of Defendant.

79.    Plaintiffs suffered damages as a result if their reliance in an amount to be proven at trial.

## VIII. THIRD CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

80.    Plaintiffs repeat and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

81.    Due to the nature of Defendant's business and the services to be provided, Defendant knew that Plaintiffs had a particular susceptibility for such distress.

82.    Defendant's actions and omissions, including without limitation its failure to fulfil its obligations to provide a safe and secure environment with adequate care, were reckless and outrageous.

83.    As a result of Defendant's actions, Plaintiffs suffered severe emotional distress including extreme fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry or nausea.

84.    Such severe emotional distress to both Plaintiff parents and Plaintiff sons was a reasonably foreseeable consequence of Defendant's negligent and/or intentional acts and omissions.

## IX. FOURTH CAUSE OF ACTION
## VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973

85.    Plaintiffs repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

86.    Plaintiffs are informed and believe, and thereon allege, that Defendant engaged in extensive national marketing and advertising, including, but not limited to, print, electronic media, television, internet and direct marketing through agents, to promote and sell the Services as suitable for the treatment of at-risk youth with substance abuse and

Class Action Complaint                                                    Page 18 of 21

other issues when they were not suitable.

87.    Defendant through its officer, Nancy Brekke and other employees of WTC (as detailed in preceding allegations), in the days and weeks preceding enrollment of Plaintiffs' sons, made virtually identical representations to each Representative Plaintiff.

88.    In a phone call with Plaintiff John Walker, after Mr. Walker explained that his son had previously threatened to run away from a treatment facility and explained his concern about security, WTC assured Mr. Walker that there was no cause for concern, asserted that WTC was experienced, sufficiently staffed, and equipped to handle these situations and that further "there was no place to go."

89.    In a phone call with Plaintiff Roy Provost, WTC used exactly the same language in response to Mr. Provost's stated concerns about his son's likelihood of attempting escape, again she said that WTC was equipped and that "there was no place to go."

90.    WTC made a series of false material statements (as outlined in prior allegations) for the purpose of obtaining business and income by selling Services to Plaintiffs.

91.    Relying heavily on these assertions and not knowing that these statements were false, Plaintiffs spent considerable money and time to transport and enroll their sons in the services provided by WTC.

92.    But for these false assertions which Defendant knew or

should have known were false Plaintiffs would not have sent their sons to WTC.

93.   Defendant expected Plaintiffs to rely on the assertions, Plaintiffs did so to their peril, suffered damages, and such reliance was reasonable.

## X. <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs, on behalf of themselves and all others similarly situated, request relief pursuant to each cause of action set forth in this Complaint as follows:

1.   For an order certifying that the action may be maintained as a class action, certifying Plaintiffs as representatives of the Class, and designating their counsel as counsel for the Class;

2.   For an award of equitable relief as follows:

   (a)   Enjoining Defendant from making any claims for the Services found to violate the Montana Unfair Trade Practices and Consumer Protection Act of 1973;

   (b)   Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint; and

   (c)   Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described in this Complaint;

3.   For all actual and compensatory damages they have

suffered, including consequential and incidental damages, as a result of Defendant's wrongful conduct and omissions in an amount to be determined at trial;

4.     For three times the actual damages sustained in accordance with applicable law;

5.     For costs, expenses and attorney's fees incurred in connection with this action;

6.     For pre-judgment and post-judgment interest on any amounts awarded;

7.     For such other relief as the Court finds just and proper.

## XI. <u>JURY DEMAND</u>

Plaintiffs respectfully demand a jury trial on all issues so triable.

Respectfully Submitted,

Dated: September 5, 2018                    By: _____

Keith L. Gross, Esq.
GROSS LAW GROUP, P.A.